# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT D. BALLATORE,

    *Plaintiff*,

v.                                        CASE NO. 11-CV-15335

COMMISSIONER OF                 DISTRICT JUDGE MARK A GOLDSMITH
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, for disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 7, 10.)

Plaintiff was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 28, 121.) Plaintiff worked as a carpenter since 1984. (Tr. at 141.) Plaintiff filed the instant claim on June 30, 2009, alleging that he became unable to work on June 30, 2009, as amended during the administrative hearing. (Tr. at 36, 121.) The claim was denied at the initial administrative stage. (Tr. at 75.) In denying Plaintiff's claims, the Commissioner considered the amputation of Plaintiff's left lower extremity and essential hypertension as possible bases for disability. (*Id.*) On March 2, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the application for benefits *de novo*. (Tr. at 15-24, 28-74.) In a decision dated March 15, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on April 25, 2011. (Tr. at 8-11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 5, 2011, when, after the review of additional exhibits[2] (Tr. at 183-86, 238-40), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-7.) On December 6, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

>Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
>Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

6

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since June 30, 2009, the amended alleged onset date. (Tr. at 17-18, 36.) At step two, the ALJ found that Plaintiff's lower left extremity amputation, chronic post-traumatic arthritis, and chronic myofascial disorder were "severe" within the meaning of the second sequential step. (Tr. at 18.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-19.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 23.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual, age 45 to 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24.)

**E.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was injured in a car/motorcycle accident in June 2002, which resulted in a right hip fracture, bilateral wrist fractures, left leg amputation above the knee and right rib fractures. (Tr. at 37, 204.)

On July 20, 2009, Dr. Sesi found Plaintiff had "traumatic arthritic changes throughout" but that his "grip strength is fair plus." (Tr. at 195.) Dr. Sesi also noted that "his problems will not get any better" and that "[t]here is no possibility of him returning to work status." (*Id.*)

On September 26, 2009, Plaintiff was examined by Disability Determination Services ("DDS") physician Michael Jacobson, D.O., who found that Plaintiff's range of motion was "without restriction in the cervical, thoracic and lumbar spine, bilateral shoulder, bilateral elbows,

7

bilateral hips, bilateral wrists and hands and fingers, knee and ankle on the right . . . [a]ll are without restricted range of motion." (Tr. at 206.) His grip strength was normal and his hands had full dexterity. (*Id.*) In addition, it was noted that Plaintiff's "[m]otor and sensory functions remained intact." (Tr. at 208.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on October 6, 2009, by Larry Jordan, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in his ability to push and pull. (Tr. at 188.) The assessment also concluded that Plaintiff should never be required to balance or crawl, could frequently stoop, but should only occasionally perform other postural tasks. (Tr. at 189.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 190-91.) The Assessment found Plaintiff to be "partially credible" and noted that although he has a "LLE amputation and uses a cane for support[,] he is able to ambulate effectively[,] there is good movement in his joints and he has full strength in his hands and arms." (Tr. at 192.)

On October 19, 2009, Dr. Sesi stated:

> I understand he went for a Social Security and Disability evaluation and that doctor found he has 'good movement in the back, hips, and knees.' I find this hard to believe. I am questioning whether the doctor even examined the correct patient as Mr. Ballatore only has 1 knee. Therefore, I find it laughable that the Social Security physician stated in his report that Mr. Ballatore has good movement in the knees. Obviously, the physician also missed the fact that Mr. Ballatore has posttraumatic wrist and hand arthritis from the multiple fractures. Again, I question whether he was examining the correct patient. In any event, I disagree with that finding and have urged Robert to seek legal counsel so that he can attempt to get his disability.

(Tr. at 222.)

8

In December 2009, Dr. Sesi noted that "[t]hings really have not changed." (Tr. at 218.) Dr. Sesi stated, "I do think that he should be approved for Social Security Disability because of his multiple and numerous posttraumatic problems." (*Id.*)

On March 8, 2010, Plaintiff reported that "the more activities he does, the worse his pain level becomes." (Tr. at 214.) Dr. Sesi noted that there were "no functional changes with regards to range, tone, mobility, strength, or reflexes" and that his "gait pattern is not changed." (*Id.*) Dr. Sesi indicated that "[t]here are really not many options left that we have not already tried," so he decided to "increase his OxyContin to 40 mg q. 8 hours" and noted that Plaintiff was "certified for the medical marijuana program." (Tr. at 214.)

On May 5, 2010, Dr. Sesi indicated that "[t]here is not much further I can do other than modulate his pain medication. . . . He understands abuse and addiction potential. I have again recommended disability for him, but he is having some issues with getting that approved." (Tr. at 211.)

On December 8, 2010, Dr. Sesi stated:

> At this point, there is not much further I can do for him other than the pain control. . . . He understands abuse and addiction potential. In the meantime, I find him to be at a disabled standpoint. He really cannot function to any significant degree with any type of physical activities. . . Apparently, he has been denied disability and I certainly do not agree with that decision. . . . I recommended him again for full disability.

(Tr. at 225.)

In his daily activity report, Plaintiff stated that he feeds his pet, is able to attend to his own personal care (although he is slow at it), and is able to prepare easy meals, but that he "can't even carry a dinner plate" without his hands giving out, and that a plate seems like it weighs 100 pounds. (Tr. at 155-56.) Plaintiff indicated he "tr[ies] to get out on nice days[,]" is able to drive and ride in a car for short distances, is able to make "quick stops" to stores around once a month, and

9

can manage money, but "sometimes . . . can't even hold a pen." (Tr. at 157-58.) Plaintiff also plays the drums and watches television "a lot more." (Tr. at 158.) Plaintiff "hang[s] out and talk[s]" with others around once a week, and uses crutches, a wheelchair, or a cane, depending on the situation, and has an artificial limb. (Tr. at 159-60.)

At the administrative hearing, Plaintiff testified that "OxyContin works best on the phantom pain and arthritis and everything I have right now." (Tr. at 39.) Plaintiff lives with his adult son and two dogs. (*Id.*) Plaintiff drives "[s]ometimes" and was able to sit without any problem from Clarkston to Detroit for the hearing. (Tr. at 40-41.) Plaintiff stated that he watches television "[f]rom the time I get out of bed 'til 11:00 at night" and that he has been doing that for "years now." (Tr. at 41.) When the ALJ asked Plaintiff about his ability to turn a steering wheel, open and close doors and contrasted that with Plaintiff's statement that a dinner plate "feels like it weighs 100 pounds," Plaintiff responded that he "might feel better one day and then other days are just completely worse," because he just never knows "about the phantom pain and what [he's] going to wake up to . . . ." (Tr. at 44.) Plaintiff stated that he has a medical marijuana card and uses marijuana to relieve pain. (Tr. at 50.) Plaintiff indicated that he can carry a gallon of milk to use on his cereal but "wouldn't want to carry it for long periods of time[.]" (Tr. at 52.)

Plaintiff stated that he is "always fidgeting, laying down, sitting – changing positions." (Tr. at 53.) Plaintiff added that he "periodically" wears his prosthesis and that he was not wearing it at the administrative hearing. (*Id.*) Plaintiff explained that since his stump has grown, the prosthesis causes "raw spots on the bottom of my stump if I wear it too long – and pain – from the prosthesis." (Tr. at 55.) Although the prosthesis gets adjusted periodically, Plaintiff indicated that he was "in need of another adjustment right now[.]" (*Id.*) Plaintiff explained that the prosthesis is not meant to be worn for long periods of time. (*Id.*) When wearing the prosthesis, Plaintiff testified

that he can stand for 15 to 20 minutes and that he can walk "for short periods of time" such as a couple of blocks or around the house. (Tr. at 56.)

Plaintiff further testified that both his "wrists were reconstructed" and that he has a difficult time handling small objects "[a]t times." (Tr. at 57.) Plaintiff also testified to swelling in his knuckles from arthritis and difficulty raising his arms in the air due to problems with his right shoulder. (Tr. at 57-58.) Plaintiff stated that he takes naps a "couple of times a day" because he's tired. (Tr. at 58.) When asked if he gets tired from watching TV, Plaintiff responded, "Yeah, I don't know. I wake up and sometimes I'm just tired from waking up . . . . Sometimes, I get out of bed, wake up, and go to the couch and take a nap with the TV on." (Tr. at 58-59.) Plaintiff stated that his medications, especially OxyContin, make him drowsy and make it harder for him to concentrate. (Tr. at 59.) Plaintiff described the worst form of phantom pain he experiences a "couple times a week" in his amputated leg as "like someone took a sledge hammer and hit me in the ankle" like an "electrical shock[.]" (Tr. at 60.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background:

> who can perform at not more than the light exertional level with the following additional limitations: The person must have a sit/stand option, can push and pull with the upper extremities only occasionally, cannot operate any foot controls with the left lower extremity, cannot climb ladders, ropes, or scaffolds, can only occasionally climb ramps or stairs or perform balancing, can frequently stoop but only occasionally crouch or kneel, the person can't perform any crawling at all.

(Tr. at 66.) The VE responded that such a person could not perform Plaintiff's past work but could perform light, unskilled work, such as the 10,000 inspector, 1,700 information clerk and 1,200 hand packer jobs that exist in the lower peninsula of Michigan. (Tr. at 65, 67.) The ALJ then asked the VE to assume the same facts as listed above with the additional limitations:

11

> the person can perform at not more than the sedentary level and instead of occasional kneeling, the person can perform not more than brief kneeling. In addition, the person can perform – cannot perform fully extended reaching with the upper extremities, but can perform some limited reaching, can occasionally perform overhead reaching and handling, again, not fully extended, can occasionally perform gross manipulation, there is not restriction on fine manipulation. In addition, the person must avoid concentrated exposure to extreme heat or cold, wetness and humidity must avoid all exposure to excessive vibration.

(Tr. at 67-68.) The VE responded that such a person could perform the 2,000 surveillance system monitor, 1,800 information clerk, 1,200 visual inspector jobs available in the lower peninsula of Michigan. (Tr. at 68.)

      For the third hypothetical, the ALJ asked the VE

> to assume the same restrictions as in hypothetical two with a few changes. First, the person can perform not more than brief pushing or pulling with the upper extremities not more than 10 percent of the work day, same with climbing ramps or stairs not more than 10 percent of the work day or brief, same with overhead reaching and handling.

(Tr. at 68-69.) The VE responded that the only jobs eliminated would be that of visual inspector but that the surveillance system monitor and information clerk jobs could still be performed. (Tr. at 69.) For the fourth hypothetical, the ALJ asked the VE:

> Assuming the same restrictions as in hypothetical three but assume that because of near constant pain, discomfort, and drowsiness, the person must be allowed to take up to 4 breaks from work per day for up to 15 minutes each time to allow then to either sit or lie down during the breaks.

(Tr. at 69.)  The VE responded that such a person could not perform any jobs. (Tr. at 69-70.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine

of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1). Therefore, ALJ Kalt's prior finding of a closed period of disability prior to June 23, 2005, is binding absent evidence of an improvement or change in condition. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). The burden is on the Commissioner to prove changed circumstances and escape the principles of res judicata. *Id.* at 843. The ALJ in this case found that Plaintiff's condition did materially change and improve after June 23, 2005. (Tr. at 19.)

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 19-22.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.    Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 7.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "made factual errors in his decision regarding facts he considered significant to the decision" (Doc. 7 at 6-10), that the ALJ's finding that Plaintiff could perform a limited range of sedentary work was not supported by substantial evidence (*id*. at 10-14), and that the ALJ failed to defer to Plaintiff's treating physician, Dr. Sesi, and instead relied on the opinion of the consulting examiner, Dr. Jacobson. (*Id*. at 14-19.)

    **a.**    **Factual Findings**

As an example of factual error, Plaintiff cites to the transcript of the hearing wherein the ALJ surmised that when Plaintiff's son is working, he is not able to take care of the dogs, then asking if Plaintiff had to let the dogs out, to which Plaintiff responded that he does have to take care of the dogs "once in a while." (Doc. 7 at 6.) Although Plaintiff then makes much ado of the fact that "we don't know if the son worked there a week or a month . . . full time or part time . . . [,]" I fail to see any factual misstep by the ALJ in inferring and then having confirmed by Plaintiff that, whenever the son worked, Plaintiff took care of the dogs, and that this occurred "once in a while." Plaintiff also argues that the ALJ inaccurately referenced Plaintiff's statement that "a dinner plate feels like it weighs 100 pounds" when Plaintiff actually stated that a "plate seems like it weighs 100 lbs." (Doc. 7 at 7.) I fail to see a difference between "feels like" and "seems like"

14

which could be considered an error on the part of the ALJ. I therefore suggest that these arguments fail to undermine the ALJ's findings.

### b. Treating Sources

Plaintiff contends that the ALJ failed to defer to Plaintiff's treating physician, Dr. Sesi, and instead relied on the opinion of the consulting examiner, Dr. Jacobson. (Doc. 7 at 14-19.)

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing

15

treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Here, the ALJ properly noted that Dr. Sesi's opinion that Plaintiff is disabled and therefore cannot work is not entitled to any particular weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Turner*, 381 Fed. App'x at 492-93.

The ALJ also indicated that he "afforded some weight to certain aspects of Dr. Sesi's treatment records," but "note[d] that there is no objective medical support in the record for Dr. Sesi's arthritis diagnosis." (Tr. at 22.) The ALJ added that Plaintiff "has apparently not sought and Dr. Sesi has not recommended any additional diagnostic testing or alternative medications or treatments" for arthritis. (*Id.*)

I suggest that substantial evidence supports the ALJ's decision. Although Plaintiff suffered several fractures in 2002, there is no mention of diagnostic tests, findings, blood work, etc., to explain Dr. Sesi's conclusion that, as of July 20, 2009, Plaintiff had "traumatic arthritic changes throughout[.]" (Tr. at 195.) In fact, not only were there no findings to support the diagnosis but there were contrary findings that Plaintiff's "grip strength is fair plus." (*Id.*) The DDS physician's findings, which the ALJ relied upon, are not inconsistent with Dr. Sesi's findings. The DDS physician also found, as did Dr. Sesi, that Plaintiff's grip strength was normal. (Tr. at 195, 206.) Rather, it is only Dr. Sesi's conclusion that Plaintiff is disabled which conflicts with the DDS physician's findings.

Although Dr. Sesi found it "laughable" that the DDS physician stated that Plaintiff, who has only one knee, had good movement in his knees and wondered whether the DDS physician examined the right patient, Dr. Sesi misreads the report. (Tr. at 222.) The DDS physician stated that Plaintiff's "[r]ange of motion is without restriction in the cervical, thoracic and lumbar spine, bilateral shoulder, bilateral elbows, bilateral hips, bilateral wrists and hands and fingers, *knee and ankle on the right* . . . [a]ll are without restricted range of motion . . . ." (Tr. at 206) (emphasis supplied).

17

I therefore suggest that the ALJ was not in error to discount "Dr. Sesi's apparently overly sympathetic opinion that the claimant is totally disabled, a conclusion that is in any event reserved to the Commissioner." (Tr. at 22.)

### c. RFC analysis

Plaintiff argues that the ALJ's finding that Plaintiff could perform a limited range of sedentary work was not supported by substantial evidence. (Doc. 7 at 10-14.) Although Plaintiff suffered several fractures and an amputation of the left leg above the knee (Tr. at 37, 204), I suggest that substantial evidence supports the ALJ's findings that, as of the relevant time period, Plaintiff had the RFC to perform a limited range of sedentary work.

The underlying medical findings indicate Plaintiff retains grip strength, range of motion and dexterity that is inconsistent with total disability. (Tr. at 195, 188-92, 206-08.) In addition, Plaintiff's modest treatment regimen of pain medication is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007).

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he feeds his pet, is able to attend to his own personal care, prepares easy meals, "gets out on nice days[,]" drives and rides in a car for short distances, makes "quick stops" to stores around once a month, manages money, plays the drums, watches television all day long, and "hangs out and talks" with others around once a week. (Tr. at 39-41, 155-60.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this report and recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

<span style="float:right">s/ **Charles E. Binder**<br>CHARLES E. BINDER</span>

Dated: October 2, 2012                                      United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  October 2, 2012                By      s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder