THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. BALLATORE,

      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

Civil Action No.
11-CV-15335

HON. MARK A. GOLDSMITH

**OPINION AND ORDER (1) ACCEPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S OCTOBER 2, 2012 REPORT AND RECOMMENDATION, (2) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO THE OCTOBER 2, 2012 REPORT AND RECOMMENDATION, (3) REJECTING THE JANUARY 8, 2013 REPORT AND RECOMMENDATION, (4) SUSTAINING PLAINTIFF'S OBJECTIONS TO THE JANUARY 8, 2013 REPORT AND RECOMMENDATION, (5) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (6) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, and (7) REMANDING FOR FURTHER CONSIDERATION**

## I.    INTRODUCTION

This is a social security case. Plaintiff Robert Ballatore appeals from the final determination of the Commissioner of Social Security denying his application for disability benefits under the Social Security Act, 42 U.S.C. § 1381(a), et seq. The Court entered an order referring the case to Magistrate Judge Charles E. Binder (Dkt. 2). The parties have filed cross motions for summary judgment (Dkts. 7, 10). On October 2, 2012, Magistrate Judge Binder issued a Report and Recommendation (R&R) (i) recommending that the decision of Administrative Law Judge (ALJ) Gregory Holiday be affirmed, and (ii) recommending that the Commissioner's motion be granted and that Plaintiff's motion be denied. (Dkt. 12.) Plaintiff has

filed objections to the R&R. (Dkt. 13.) The Court issued an order returning the matter to Magistrate Judge Binder with instructions (Dkt. 14), and on January 8, 2013, Magistrate Judge Binder issued a second R&R (Dkt. 15) to which Plaintiff filed objections (Dkt. 16).

For the reasons that follow, the Court will accept in part and reject in part the first R&R, sustain in part and overrule in part Plaintiff's objections to the first R&R, reject the second R&R, sustain Plaintiff's objections to the second R&R, grant in part and deny in part Defendant's motion for summary judgment (Dkt. 10), grant in part and deny in part Plaintiff's motion for summary judgment (Dkt. 7), and remand the matter for further consideration.

## II.    BACKGROUND AND PROCEDURAL POSTURE

### A. Factual Background

Plaintiff worked as a commercial carpenter since 1984, Tr. at 141 (Dkt. 5), and was 46 years old at the time of the most recent hearing. Tr. at 121. In 2002, Plaintiff experienced a motorcycle accident and had a "right hip fracture, bilateral wrist fractures, left leg amputation above the knee and right rib fractures." Tr. at 204. In 2005, ALJ Melvyn B. Kalt granted Plaintiff's application for disability benefits, with an established onset date of disability of June 6, 2002, and a closed disability date of January 4, 2005. Tr. at 15. Plaintiff filed a second application on August 2, 2005, and that claim was ultimately dismissed. Tr. at 15.

On June 30, 2009, Plaintiff filed the instant claim for benefits. Tr. at 121. Plaintiff alleged that he became unable to work on June 30, 2009. Tr. at 36. On October 6, 2009, Plaintiff was determined not disabled during the initial stage of the administrative process. Tr. at 75. On October 27, 2009, Plaintiff requested a hearing on this decision before an Administrative Law Judge, Tr. at 80, and the hearing took place on March 2, 2011 before ALJ Gregory Holiday.

Tr. at 30-74. At the hearing, the ALJ heard testimony from Plaintiff, Tr. at 35, and from Pauline McEachin, a vocational expert. Tr. at 63.

### B. The ALJ's Decision

On March 15, 2011, the ALJ issued his decision that Plaintiff was not disabled from June 30, 2009, through the date of the decision. Tr. at 24. Plaintiff requested a review of this decision, Tr. at 8, and the Appeals Council denied this request. Tr. at 1. At that point, therefore, the ALJ's decision became the final decision of the Commissioner. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004).

The ALJ based his decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim.[1] The ALJ's findings were as follows:

- Under Step One, Plaintiff met the insured status requirements through December 31, 2014, and Plaintiff had not engaged in any substantial gainful activity since June 30, 2009. Tr. at 17-18.

- Under Step Two, Plaintiff had the following severe medically determinable impairments: lower left extremity amputation; chronic post-traumatic arthritis; and chronic myofascial disorder. Tr. at 18.

- Under Step Three, Plaintiff did not have any impairment of combination of impairments that met or equaled one of the listed impairments. Specifically, the ALJ determined that there was no documentation of spinal abnormalities sufficient to meet the listing governing spine disorders, and there was insufficient medical evidence of stump complications or inability to use a prosthetic device that would meet the listing of major joint dysfunction. Tr. at 18.

- Plaintiff had the following residual functional capacity (RFC):

    to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he: requires a sit/stand option; can perform no more than brief (up to 10% of the work day) pushing and pulling; cannot operate foot controls; can never climb ladders, ropes, or scaffolds; can only briefly climb ramps or stairs; can only occasionally (up to 1/3 of the work day) balance, stoop or crouch; can

---

[1] The R&R adequately lays out the law and regulations governing the five-step analysis. 1st R&R at 5-6 (Dkt. 12), citing 20 C.F.R. §§ 404.1520, 416.920.

3

> only briefly kneel; cannot crawl; cannot perform fully extended reaching; can only briefly perform overhead reaching (none fully extended); can only occasionally perform gross manipulation; must avoid concentrated exposure to extreme heat and cold and to wetness/humidity; and must avoid all excessive vibration.

Tr. at 19.

- Under Step Four, Plaintiff, given his RFC, could not perform any of his past relevant work. Tr. at 23.

- Under Step Five, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 23. Specifically, Plaintiff can perform the following jobs: surveillance system monitor or information clerk. Tr. at 24.

Therefore, at Step Five, the ALJ determined that Plaintiff was not disabled. Tr. at 24.

On October 2, 2012, Magistrate Judge Binder issued an R&R recommending that the ALJ's decision be affirmed (Dkt. 12).

### C. Clarification of the Record

On October 16, 2012, Plaintiff submitted objections to the first R&R. (Dkt. 13). Plaintiff's first objection contends that the R&R contains some factual errors. Obj. at 5, 14. First, Plaintiff argues that the R&R impermissibly relies on an RFC form completed by a "single decision maker" named Larry Jordan. Obj. at 5. Plaintiff argues that under the Social Security Administration's rules, the ALJ may not accord these forms any evidentiary weight. Id. Plaintiff cites a memorandum from Chief Administrative Law Judge Frank A. Cristaudo. Ex. A to Obj. (Dkt. 13-1). The memorandum states that under 20 C.F.R. §§ 404.906(b)(2) and 416.1406(b)(2), a non-medical single decision maker (SDM) may make the initial disability determination. In making this determination, the SDM may fill out the Physical RFC Form, SSA-4374-BK. ALJs may "not accord [the RFC forms completed by the SDM] any evidentiary weight when deciding cases at the hearing level." Ex. A.

The Court agrees with Plaintiff, and concludes that the R&R impermissibly relied, in part, on a discussion of the Physical RFC Form submitted by the SDM who initially denied Plaintiff benefits on the instant claim. See 1st R&R at 8 (citing RFC Assessment by SDM Larry Jordan, Tr. at 188). The Larry Jordan RFC Assessment is a Form SSA-4734-BK. Tr. at 187-194. Social Security Program Operations Manual System § 24510.050C(V) states, "It must be clear to the appeal-level adjudicator when the SSA-4734-BK was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." See also Dewey v. Astrue, 509 F.3d 447, 449 (8th Cir. 2007) (remand required where the ALJ gave substantial weight to the Physical RFC Assessment completed by a non-medical counselor). Therefore, the Court notes that, although the ALJ did not mention Jordan's RFC assessment form, the R&R impermissibly relied on this assessment by a non-medical decision maker.

Plaintiff also contends that the R&R erred in finding that he "plays the drums." Obj. at 14. The Court agrees. The record indicates that although Plaintiff used to play drums, he has not played drums since the onset of his injuries. Tr. at 158.

### III. STANDARD OF REVIEW

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (citation and quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## IV.     ANALYSIS

### A.  Objection One: Failure to Adequately Consider Prior Disability Determination

Plaintiff contends that his condition did not improve between the 2005 grant of disability benefits and his 2011 disability claim. Obj. at 7 (Dkt. 13). He argues that, although ALJ Holiday found Plaintiff's condition "did materially change after June 23, 2005," the ALJ made "no specific findings about what condition improved or . . . what change there was in past relevant work." Id. at 8. Plaintiff contends that it is not possible to "conclude how some things did or did not change unless we know what the 2005 decision said. The ALJ cannot raise 'res judicata' . . . and then offer no explanation as to what the prior ruling was and how he has reached a different conclusion." Id.

In the Sixth Circuit, it is established that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842 (6th Cir. 1997). See also Dennard v. Sec. of Health & Human Servs., 907 F.2d 598, 600 (6th Cir. 1990) (concluding that after an ALJ made a finding regarding the nature and extent of the claimant's exertional level in his past work, subsequent ALJs were precluded from reconsidering that factual issue).

In his March 15, 2011 decision denying Plaintiff's claim for disability benefits, ALJ Holiday stated:

> ALJ Kalt's prior finding concerning the claimant's residual functional capacity is binding absent evidence of an improvement or change in condition since the prior hearing . . . . I find that the claimant's condition did materially change after June 23, 2005, and I have made my findings concerning the claimant's residual functional capacity in consideration of the evidence of those changes, detailed below.

Tr. at 19.

On December 20, 2012, the Court issued an Order returning the matter to Magistrate Judge Binder (Dkt. 14). The Order stated, in part:

> The Court has carefully reviewed the ALJ's decision and, as Plaintiff contends, the ALJ does not state what the 2005 residual functional capacity (RFC) finding was, nor does the ALJ explain how the current status of Plaintiff's condition is different from the status of Plaintiff's condition in 2005. Without evidence that Plaintiff's condition improved since 2005, the ALJ is bound by the 2005 RFC determination. See Drummond, 126 F.3d at 842.

Order at 2. The Order returned the matter to the Magistrate Judge to clarify on what grounds he determined there was an improvement in Plaintiff's condition since 2005. Id. at 3.

Magistrate Judge Binder filed a second R&R in response to the Court's Order (Dkt. 15). The R&R states, "[t]he reason the R&R did not specifically analyze the ALJ's findings regarding changed circumstances in the context of res judicata is because Plaintiff never raised that issue in his motion for summary judgment." 2d R&R at 2 (Dkt. 15). The R&R contends that Plaintiff therefore waived this argument. Id. The R&R further recommends that should the Court review Plaintiff's objection, the objection should be overruled, because substantial evidence supports a finding that Plaintiff's condition improved. Id. at 3.

Plaintiff filed objections to the second R&R (Dkt. 16). Plaintiff argues that he did raise the issue of res judicata with regards to the 2005 ALJ decision in his motion for summary judgment (Dkt. 7) and in his response to Defendant's motion for summary judgment (Dkt. 11). Obj. at 2-4 (Dkt. 16). Plaintiff also argues that "[t]here is no way to ascertain how Plaintiff 'improved' from 2005 to 2010 by a review the [sic] ALJ's decision." Id. at 5.

The Court concludes that Plaintiff sufficiently raised the res judicata issue in his motion and response. In his motion for summary judgment, Plaintiff states:

> The ALJ on ID P. 35 (Page 5 of his decision) notes that in June of 2005 claimant was found to be disabled for a "closed period." He (correctly) quotes the law on the matter. He notes that in the four years since that date claimant's condition has

7

>worsened. There is no further discussion of this issue by the ALJ but it has real meaning.

Pl. Br. for Mot. for Summ. J. at 13 (Dkt. 7).  In his response to Defendant's summary judgment motion, Plaintiff states:

>The ALJ does cite the previous file in this matter (ID page 31 and ID page 35) but other than noting some very basic information about the ALJ's decision in 2005, he concludes at the bottom of ID page 35 that claimant's condition somehow improved from that time. The ALJ cites dates and the name of the Judge but no specifics. The complete lack of detail about that 2005 judge's decision suggests that the only information available and/or reviewed by the current judge was a docket sheet of some kind. There is no information about what the 2005 judge decided (specifically) or for that matter what facts the new ALJ relied on to show what or how claimant "improved."
>. . . .
>The <u>2011</u> ALJ did not make the 2005 Decision available nor was it posted as an exhibit. The 2011 ALJ does cite <u>Denard v Secretary of HHS</u> (907 F.2d 598 (6th Cir. 1990) on the 7th page of his decision, but he does not state what condition or conditions he is referring to, or how he is applying <u>Denard</u>.  <u>Denard</u> is, simply put, a res judicata for Social Security decisions.

Pl. Resp. at 7-8 (Dkt. 11) (emphasis in original).

These arguments were sufficient to raise the <u>res judicata</u> issue to the Magistrate Judge. Furthermore, Magistrate Judge Binder did discuss this issue in his first R&R (Dkt. 12).  The R&R states:

>ALJ Kalt's prior finding of a closed period of disability prior to June 23, 2005, is binding absent evidence of an improvement or change in condition. <u>See Drummond v. Comm'r of Soc. Sec.</u>, 126 F.3d 837, 842 (6th Cir. 1997). The burden is on the Commissioner to prove changed circumstances and escape the principles of res judicata. <u>Id.</u> at 843. The ALJ in this case found that Plaintiff's condition did materially change and improve after June 23, 2005. (Tr. at 19.)

1st R&R at 13.  However, there was no further discussion of this issue in the first R&R.

Absent evidence that Plaintiff's condition improved since 2005 – a conclusion that necessarily requires discussing the status of Plaintiff's condition in 2005 – the ALJ is bound by the prior RFC determination.  Therefore, the Court rejects the first and second R&Rs to the

8

extent they suggest that the ALJ's decision that Plaintiff's condition "did materially change after June 23, 2005" applied the correct legal principles and was supported by substantial evidence.

### B. Objection Two: Failure to Properly Apply the Treating Physician Rule

Plaintiff argues that the ALJ did not properly apply the treating physician rule. Obj. at 9-13 (Dkt. 13). Plaintiff contends that the opinion of his treating physician, Dr. Timothy Sesi, was entitled to more than the limited amount of weight given by the ALJ. Id. at 9. Plaintiff argues that Dr. Sesi is a long-time treater and specializes in physical medicine, electrodiagnostic medicine, and rehabilitation. Id. Plaintiff contends that Dr. Sesi's opinion that Plaintiff experienced severe pain and arthritis, making it impossible to work, was entitled to greater weight than the opinion of the consulting physician. Id. at 10-11. Plaintiff also argues that he meets the listed impairment for amputation with inability to use a prosthetic device to ambulate effectively, and this is supported by Dr. Sesi's opinion that Plaintiff "is having a fair amount of difficulty maintaining household activities." Id. at 10-11. Plaintiff argues that the ALJ did not give good reasons for discounting Dr. Sesi's opinion regarding his inability to work, id. at 12, and that reliance on Dr. Sesi's opinion in the absence of objective blood work or diagnostic tests is necessary because "it would not be proper for legal personnel to be rendering opinions about what those [objective medical] tests did or did not mean." Id. at 13. Plaintiff also argues that the ALJ improperly relied on the findings of a non-medical "single decision maker" in setting up his hypotheticals to the vocational expert. Id. at 13.

ALJs are bound by the "treating physician rule," which provides for the amount of deference a decision-maker must give to the opinions of the claimant's treating physician. Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir.2009). The treating source's opinion must be given "controlling weight" if the treating source opinion is "well-supported by medically

9

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must (i) determine how much weight to assign to the treating source opinion, and (ii) support its determination of how much weight to give with "good reasons." See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550 (6th Cir. 2010); Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007). Factors to consider in determining the appropriate weight to give to a medical opinion include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the extent of evidence provided by a medical source to support an opinion, the consistency of the opinion with the record as whole, whether or not the medical source is a specialist, and other appropriate factors that the parties may bring to the Court's attention. 20 C.F.R. § 404.1527(c).

In the instant case, it is undisputed that Dr. Sesi is Plaintiff's treating physician. In the treatment records, Dr. Sesi opined that Plaintiff is "at a disabled standpoint." Tr. at 225. The ALJ stated, "I give limited weight to Dr. Sesi's conclusion that the claimant is unable to perform work activity as such finding is within the special purview of the undersigned. Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Tr. at 21.

> The ALJ further stated:
>
> The claimant's medical records evidence his treatment from April 2009 through the hearing date with Timothy P. Sesi, M.D., for pain management and other treatment related to his injuries and resulting pain . . . .
>
> I have carefully considered all of the evidence of record in reaching my conclusions about the claimant's capabilities and limitations relative to work functions. Though I have afforded some weight to certain aspects of Dr. Sesi's treatment records, I note that there is no objective medical support in the record

10

> for Dr. Sesi's arthritis diagnosis. The claimant has apparently not sought and Dr. Sesi has not recommended any additional diagnostic testing or alternative medications or treatments, which one would expect given the claimant's alleged level of pain and discomfort.
>
> Independent examiner Dr. Jacobson found the claimant's prosthesis to be adequate and good range of motion of the claimant's spine, all of his major joints, and his wrists and hands (Ex. C4F). The claimant has indicated that he can care for his hygiene, visit with friends, drive, get out on nice days, and focus on television all day long; his less credible allegations (e.g., that a dinner plate feels like it weighs 100 pounds (see, e.g., Ex. C4E), or that his pain is a level 10 of 10 (Ex. C6F, p. 5)) are difficult to reconcile with his demonstrated and admitted capabilities. The claimant's purported level of reliance on his son is belied by the son's absence from the home at work for extended periods. The claimant has apparently, at times, been non-compliant in taking his medications (Ex. C5F, p. 8). For these reasons and all the reasons set forth in this decision, I have given limited weight to Dr. Sesi's apparently overly sympathetic opinion that the claimant is totally and permanently disabled, a conclusion that is in any event reserved to the Commissioner.

Tr. at 22.

Therefore, while the ALJ found that Plaintiff's conditions do restrict the activities he is capable of performing,[2] the ALJ rejected Dr. Sesi's opinion that Plaintiff's problems with pain and arthritis were so debilitating as to render Plaintiff disabled. The Court concludes that the ALJ gave good reasons for assigning limited weight to Dr. Sesi's opinion, and that the ALJ's determination is supported by substantial evidence in the record.

First, the ALJ is correct that Dr. Sesi's conclusion that Plaintiff is disabled is not entitled

---

[2] The ALJ concluded that "claimant's testimony and his documented problems with and treatment for his amputated left leg, post trauma arthritis and myofacial problems" support the determination that Plaintiff could perform sedentary work with a sit/stand option, no more than brief pushing and pulling, only occasional crouching, only brief kneeling, no crawling, no operation of foot controls, and only brief overhead reaching. Tr. at 22. The ALJ further concluded that Plaintiff's "impairments combined with the effects that might be expected to arise from his use of narcotic pain medications" indicate that Plaintiff cannot climb ladders, ropes, or scaffolds, and can only occasionally climb stairs or balance. Tr. at 22. Finally, the ALJ concluded that Plaintiff's "somewhat consistent complaints to Dr. Sesi about problems with his hands and negative effects of certain environmental factors support [the] findings that the claimant can only occasionally perform gross manipulation and that he must avoid concentrated exposure to [extreme environmental conditions]." Id. at 22-23.

11

to controlling weight, because such decision is "reserved to the Commissioner." Kidd v. Comm'r of Soc. Sec., 283 F. App'x 336, 341 (6th Cir. 2008); 20 C.F.R. § 404.1527(d)(1).

The Court further concludes that the ALJ gave good reasons for assigning "limited" weight to Dr. Sesi's opinion. The ALJ indicated that there was no objective medical diagnostic evidence of arthritis, and that Plaintiff's claims of extreme limitations due to phantom pain and arthritis were contradicted by evidence that Plaintiff had demonstrated and admitted capabilities of caring for his hygiene, driving, taking care of his dogs, and briefly carrying a gallon of milk, as well as by indications that Plaintiff was not always taking his pain medication. Tr. at 20. The ALJ permissibly discounted Plaintiff's credibility based upon his finding that Plaintiff's testimony was contradicted by other evidence in the record. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

It is true, as Plaintiff argues, that the ALJ did not explicitly consider the length of time Dr. Sesi had been treating Plaintiff or Dr. Sesi's specializations in physical medicine and rehabilitation. However, the ALJ was not required to delineate each factor listed in C.F.R. § 404.1527(c). See Tilley v. Comm'r of Soc. Sec., 394 F. App'x 216, 222 (6th Cir. 2010) (ALJ's determination of weight to accord to a treating physician's opinion was upheld although the ALJ did not address each of the regulatory factors, where the ALJ fully described his reasoning for discounting the opinion). The Court concludes that, as discussed above, the ALJ thoroughly described his reasoning for according limited weight to Dr. Sesi's opinion.

Furthermore, the Court concludes that the following substantial evidence supports the ALJ's decision to assign limited weight to Dr. Sesi's opinion that Plaintiff's conditions were so severe as to render him unable to work.

- Dr. Sesi's notes and opinions do not refer to any medical diagnostic tests. The diagnoses of extreme pain are based on Plaintiff's self-reporting; and, although pain may

necessarily be a self-reported condition, the fact that Plaintiff's bloodwork reveals he was not taking his pain medications, Tr. at 217, belies Plaintiff's assertion that his pain was a level 10 out of 10, Tr. at 229, or that Plaintiff's pain requires him to spend "most of [his] day lying on the couch waiting for [his] meds to kick in." Tr. at 154.

- Plaintiff further indicates that while some days are better and some days are worse, he still drives "sometimes," Tr. at 40; he can write email, Tr. at 46; he can carry a gallon of milk occasionally despite his hands sometimes "locking up," Tr. at 51-52; he can sometimes handling small objects, although he has problems "sometimes", Tr. at 57; and he buys groceries. Tr. at 157. Therefore, Plaintiff's self-reporting regarding his level of pain and dexterity in his hands indicates that, on a fairly regular basis, he handles basic fine manipulation such as typing, and some gross manipulation such as carrying a gallon of milk or carrying groceries.

- The September 26, 2009 Consultative Examination Report by Dr. Jacobson states that Plaintiff has:

    > [T]enderness to palpation to many of the joints . . . [Plaintiff] did have pain upon all range of motion exercises; but was able to complete them with a cheerful attitude. Range of motion is without restriction in the cervical, thoracic and lumbar spine, bilateral shoulder, bilateral elbows, bilateral hips, bilateral wrists and hands and fingers, knee and ankle on the right only secondary to the prosthesis on the left . . . . Grip strength is normal. The hands have full dexterity.

    Tr. at 206. This report indicates that Plaintiff does experience pain in his joints, but not pain of an extremely severe nature; and that the mobility, dexterity, and strength of Plaintiff's hands and arms were normal.

- Dr. Sesi's reports of Plaintiff's ability for gross and fine manipulation are somewhat inconsistent. Dr. Sesi's treatment notes state that Plaintiff has "continued phantom pain" of an "elevated" level, Tr. at 214; that Plaintiff has diffuse arthritic changes, with a right grip strength of 20 pounds and a left grip strength of 24 pounds, Tr. at 222; that Plaintiff's grip strength is "fair plus," Tr. at 195; and that Plaintiff has "significant phantom pain" and "difficulty with hand dexterity." Tr. at 225. Therefore, Dr. Sesi reports that Plaintiff's grip strength is at least fair, but also notes that Plaintiff's arthritis causes difficulty with hand dexterity generally.

In sum, considering the entirety of the evidence in the medical record, Dr. Sesi's opinions regarding the severity of Plaintiff's arthritis and phantom pain are unsupported by objective medical record evidence, and are contradicted by other evidence in the record. For these reasons, the ALJ's decision to give limited weight to Dr. Sesi's opinions was supported by substantial

evidence. See Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 156 (6th Cir. 2009) (ALJ's decision not to defer to treating physician's opinion was supported by substantial evidence where the opinion was based on subjective complaints and not objective medical data, and where the treating physician's opinion was contradicted by the opinions of other treating physicians and medical consultants).

The Court's conclusion is supported by Brock v. Comm'r of Soc. Sec., 368 F. App'x 622 (6th Cir. 2010), in which the Sixth Circuit upheld an ALJ's decision to disregard a treating physician's conclusion that the claimant was totally disabled, where the AJ challenged the supportability and consistency of the treating physician's diagnoses. The court stated:

> Here, the administrative law judge's decision to reject the opinion of Dr. Moore was supported by substantial evidence in the record and provided "good reasons" to inform Brock of why Dr. Moore's opinion was not being credited. As an initial matter, he correctly disregarded Dr. Moore's statement that Brock was "100% disabled," as the regulations reserve this determination for the Social Security Secretary. 20 C.F.R. § 404.1527(e)(1). Subsection (e)(3) further states that no "special significance" will be given to opinions of disability, even those made by the treating physician. 20 C.F.R. § 404.1527(e)(3).
>
> Additionally, the administrative law judge's findings challenge the supportability and consistency of Dr. Moore's diagnoses with the other evidence in the record in an indirect but clear way, as was the case in Nelson v. Commissioner of Social Security, 195 F. App'x 462 (6th Cir.2006) (when administrative law judge attacks the supportability and consistency of treating physician's opinion describing its faults, then treating physician's opinion may not be consistent with the record as a whole and, therefore, not entitled to controlling weight). The administrative law judge noted that Dr. Moore's findings did not have the support of clinical data. AR at 25. Dr. Moore's diagnoses for degenerative disc disease or fibromyalgia were not confirmed by diagnostic or radiological studies. Id. Additionally, the judge considered evaluations by other examining doctors.

Id. at 624-625. As in Brock, the treating physician in the instant case did not support his diagnosis with clinical diagnostic testing, and the ALJ appropriately noted the inconsistencies

between Dr. Sesi's diagnosis of severe, debilitating pain and the other evidence in the record, such as self-reporting and the report by the independent examiner.

Plaintiff also seems to raise an argument that the ALJ should have found that Plaintiff's impairments met the listings for medical inability to use a prosthetic device or otherwise to ambulate. The determination whether Plaintiff's impairments meet or exceed the listed impairments is reserved to the Commissioner, and no treating source's opinion is accorded special significance. 20 C.F.R. § 404.1527(d)(2). The ALJ concluded: "The claimant's amputation does not meet the requirements of the listing at Section 1.05 because there is insufficient medical evidence of stump complications resulting in medical inability to use a prosthetic device or otherwise to ambulate effectively and no evidence of hemipelvectomy or hip disarticulation." Tr. at 18.

The Social Security regulations provide: "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. § 404, subpart P (Appendix 1), 1.00(B)(2)(b)(2). Plaintiff has pointed to no opinion of Dr. Sesi's that indicates Plaintiff is <u>unable</u> to carry out activities of daily living; Dr. Sesi's opinion that Plaintiff has difficulty maintaining household activities does not mean Plaintiff is incapable of carrying out activities of daily living. Furthermore, the Court concludes that substantial evidence supports the ALJ's conclusion that there is no medical evidence showing Plaintiff is unable to ambulate sufficiently to maintain the activities of daily life. The Court notes that the record evidence indicates Plaintiff has a prosthesis and uses a cane to ambulate. Tr. at 198, 204, 219.

Finally, the Court concludes that Plaintiff is incorrect to the extent he argues that the lack of objective medical evidence does not limit the amount of weight the ALJ should give to Dr.

Sesi's opinions. Obj. at 13. It is established that a treating physician's opinions are only given controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." See 20 C.F.R. § 404.1527(c)(2). Although Plaintiff contends that it is not proper for legal or judicial personnel to draw conclusions from diagnostic techniques, a court is competent to determine whether the treating physician supports his opinions with reference to and interpretation of valid medical diagnostic techniques, or whether the treating physician has no apparent objective support for his opinions. Furthermore, although Plaintiff argues that the ALJ improperly relied on the findings of the non-medical decision maker, obj. at 13, the Court disagrees. The Court has carefully reviewed the ALJ's opinion, and the ALJ does not refer in any way to the report by the non-medical single decision maker.

The Court concludes that the ALJ properly applied the treating physician rule, and that substantial evidence supports the limited weight the ALJ assigned to Dr. Sesi's opinion.

## V.   CONCLUSION

For the reasons stated above, the Court accepts in part and rejects in part the Magistrate Judge's first R&R (Dkt. 12), sustains in part and overrules in part Plaintiff's objections to the first R&R (Dkt. 13), rejects the Magistrate Judge's second R&R (Dkt. 15), sustains Plaintiff's objections to the second R&R (Dkt. 16), grants in part and denies Defendant's motion for summary judgment (Dkt. 10), grants in part and denies in part Plaintiff's motion for summary judgment (Dkt. 7), and remands for further consideration pursuant to 42 U.S.C. § 405(g), sentence four. Upon remand, the ALJ shall determine whether Plaintiff's condition materially improved since the 2005 disability determination; in doing so, the ALJ shall explicitly discuss and reference the 2005 findings.

SO ORDERED.

Dated:  March 15, 2013                                         s/Mark A. Goldsmith_____
    Flint, Michigan                                            MARK A. GOLDSMITH
                                                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 15, 2013.

                                            s/Felicia M. Moses for Deborah Goltz
                                            DEBORAH J. GOLTZ
                                            Case Manager