UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BALLATORE,

     *Plaintiff,*

CASE NO. 11-15335

*v.*

DISTRICT JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant.*

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S AMENDED MOTION FOR ATTORNEY'S FEES
(Doc. 31)

Nearly half a decade ago, Plaintiff Robert Ballatore brought this suit to contest a denial of disability benefits by Defendant Commissioner of Social Security. (Doc. 1.) After District Judge Mark A. Goldsmith remanded the case to the agency, the Commissioner found Ballatore disabled and awarded him benefits. (Doc. 31 at 5-6.) His attorney, Philip R. Fabrizio, now moves pursuant to 42 U.S.C. § 406(b) for attorney fees of $23,303.25, constituting the $23,394.25 the Commissioner has withheld from Ballatore's past-due benefits, less a $91 agency collection fee. (*Id.* at 10.) The Commissioner does not object to Fabrizio's request. For the reasons below, I recommend granting Plaintiff's motion, in part, and awarding $17,394.25.

## I.  Relevant Factual and Procedural Background

In June 2005, Ballatore was awarded a closed benefit period beginning in June 2002 and ending in January 2005. (Transcript, Doc. 5.) A second application filed in

1

2005 was dismissed, but in 2009 he again filed for benefits and this time pressed through the administrative process. *Ballatore v. Comm'r of Soc. Sec.*, No. 11-CV-15335, 2013 WL 1090671, at *1 (E.D. Mich. Mar. 15, 2013). At some point Ballatore and Fabrizio entered into a contingent-fee agreement for Fabrizio's representation of Ballatore in federal court. (Doc. 31 at Pg ID 601.) Under the contract, Ballatore agreed that "[i]f I DO get money from Social Security, the fee will be ONE-QUARTER (25%) OF THE MONEY I GET. Back money includes all money going to me and my family under regular Social Security and [Supplemental Security Income]." (*Id.*)

Ballatore ultimately prevailed in the district court. *Ballatore*, 2013 WL 1090671, at *1, 10; (Doc. 7). The process required more work than usual, as the magistrate judge issued two Report and Recommendations in the case. (Docs. 12, 15.) The first rejected Ballatore's arguments and recommended granting the Commissioner's motion. (Doc. 12 at 1.) After Ballatore filed objections (Doc. 13), the magistrate judge issued a second Report, requested by the district judge, specifically addressing and rejecting Ballatore's contention that the administrative law judge ("ALJ") had botched the *res judicata* analysis. (Doc. 15.) A second set of objections took aim at both Reports. (Doc. 25.) Judge Goldsmith determined that the ALJ failed to explain how Ballatore's condition had changed after the 2005 decision, and thus remanded the case to the Commissioner. *Ballatore*, 2013 WL 1090671, at *5.

Back before the agency, Ballatore and Fabrizio prepared for yet another ALJ hearing in December 2013. (Doc. 31 at 2.) Shortly prior to the hearing date, the ALJ rescheduled and, on April 2, 2014, he decided without a hearing that Ballatore was

disabled. (*Id.*) It took almost a year for the Commissioner to send an award letter, which Ballatore received in February 2015. (*Id.* at Pg ID 602-08.) The letter introduced a new round of confusion into the proceedings. Ballatore was entitled to past-due benefits for the period beginning in July 2009 and ending in December 2014. (*Id.* at Pg ID 602.) The monthly amounts are listed in the letter with cost of living adjustments noted for each year. His total "past-due benefits [were] $93,577.00" for the period, the letter explained. (*Id.* at Pg ID 605.) Twenty-five percent of that figure, or $23,394.25, would be withheld for possible attorney's fees. (*Id.*) This left Ballatore with $21,315.15, the letter announced, and a check would shortly follow. (*Id.* at Pg ID 603.) This also left Ballatore wondering what happened to the rest of the award, amounting to roughly $50,000. (*Id.* at 2-3.)

Relying on these ambiguous figures, Fabrizio filed the present amended motion for fees on March 12, 2015. (*Id.*) He asks the Court to award the full amount currently withheld, arguing that the agreement with his client envisions such a fee and that it is also reasonable under 42 U.S.C. § 406(b). (*Id.* at 2-10.) To support its reasonability, he notes that the case required re-argument before both the magistrate and district judges and that he achieved remand on narrow and complex grounds. (*Id.* at 8.) Further, he contends that his opponent's position was "substantially justified," and thus more difficult to overcome, as proven by the district judge's denial of a fee award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2142. (*Id.*); *see also* (Doc. 26 at 13). As a result, the outcome remained highly contingent and the fee adequately compensates for the risk he undertook.

The Commissioner's response explained that the discrepancy in the past-due benefits award letter resulted from overpayments she had made to Ballatore between 2005 and 2010. (Doc. 35 at 2.) The response proposed that the Court could reasonably pursue any of three alternatives: (1) find that the fee agreement allows "Mr. Fabrizio to seek 25% of all past-due benefits to which Mr. Ballatore is entitled, including those that were used to repay the overpayment"; (2) "conclude that the agreement allows Mr. Fabrizio to receive only 25% of the past-due benefits that were actually *payable* to Mr. Ballatore"; or (3) determine that the fee agreement is too ambiguous and "instead determine a 'reasonable' fee under § 406(b) without reference to the agreement." (*Id.* at 5-6.) If the Court ordered the full fee, the Commissioner stated that $6000 should be deducted be it has "already been authorized" as payment for Fabrizio's "administrative-level work" (*id.* at 7-8), presumably under 42 U.S.C. § 406(a). She concedes that the odds of Ballatore prevailing "were low," and that Fabrizio nonetheless "devoted a significant amount of time to this matter." (*Id.* at 8.) Granting the motion, less $6000, would thus not constitute "an unjustified windfall." (*Id.* at 8.)

As explained in this Court's Order requiring supplemental briefing, the Commissioner's response did not illuminate the precise amount and timing of the overpayments. (Doc. 38.) It seemed reasonably certain that the gross past-due benefits totaled $93,577, but the overpayments were not clear. Despite the Commissioner's consistent assertion that Ballatore would receive $21,315.15 after paying the attorney's fee, the ambiguity surrounding the overpayments potentially rendered the payable benefits uncertain. Fabrizio observed this lack of clarity in his reply. (Doc. 37 at 1-2, 6.)

4

He believed, however, that the alleged overpayments were includable as part of the basis for computing his fee and therefore the Court should order the full award. (*Id.*) Further, he denied that the contract limits him to 25 percent of the payable benefits. (*Id.* at 2-3.)

In its supplemental brief, the Commissioner did a superlative job of explaining the situation and obviating it. (Doc. 41.) The brief explains the overpayments and calculations behind them. But more importantly, it notes that the Commissioner has determined, for now, that Ballatore will receive the full entitlement amount of $93,577. (*Id.* at 6-7.) Any possible issues arising from the overpayments, and the resulting discrepancy between the gross and net entitlement figures, have disappeared. Fabrizio agrees that the concerns expressed in the Court's prior Order are no longer relevant. (Doc. 44 at 3.) In addition, Ballatore has offered a letter stating that Fabrizio is "entitled to approximately $23,000," and that he does not object to Fabrizio's motion. (Doc. 48 at 1.)

### III.  Legal Standards

Fabrizio requests attorney's fees pursuant to 42 U.S.C. § 406(b). Under that statute, after the court renders a favorable judgment to a claimant, it "may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total past-due benefits to which the claimant is entitled by reason of such judgment." *Id.* § 406(b)(1)(A). The favorable "judgment[s]" resulting in benefits are not limited to court orders awarding those benefits; the statute is satisfied by remands to the Commissioner that lead to administrative awards of past-due benefits. *See Horenstein v. Sec'y of Health & Human Servs.*, 35 F.3d 261, 262 (6th Cir. 1994) ("[I]n cases where the

5

court remands the case back to the Secretary for further proceedings, the court will set the fee—limited to 25 percent of past-due benefits—for the work performed before it."); *Figard v. Comm'r of Soc. Sec.*, No. 1:09-cv-425, 20120 WL 1601300, at *2 (W.D. Mich. Mar. 12, 2012) ("An attorney fee award is appropriate under § 406(b)(1)(A) when a court remands a case to the Commissioner for further proceedings and the Commissioner subsequently awards the claimant past-due benefits."), *Report & Recommendation adopted by* 2012 WL 1600800, at *1 (W.D. Mich. May 7, 2012).

The centerpiece of the § 406(b) analysis is the contingent-fee agreement between the claimant and his or her attorney. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 808-09 (2002). It was perhaps inevitable that such contracts would predominate despite the subsection's failure to mention them. The neighboring provision in § 406(a), erected in its current form in the 1990s, constructs a framework for the Commissioner to use when reviewing fee agreements submitted at the agency level prior to judicial proceedings. *Id.* at 805-06. Thus most disappointed claimants and their attorneys trudge to federal court with contract in hand.[1]

Partially in light of this reality, the Supreme Court has instructed that "§ 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court." *Gisbrecht*, 535 U.S. at 807; *see also id.* at 805 ("Given the prevalence of contingent-fee agreements between attorneys and Social Security claimants, it is unlikely that Congress, simply by

---

[1] *See Rodriquez v. Bowen*, 865 F.2d 739, 743 (6th Cir. 1989) ("Most fees in social security cases are pre-arranged on a contingency basis."); *Zent v. Astrue*, No. 1:10-CV-00080, 2011 WL 5101842, at *1 n.1 (N.D. Ind. Oct. 25, 2011) ("The most common fee arrangement between attorneys and social security claimants is the contingent fee agreement.").

prescribing 'reasonable fees,' meant to outlaw, rather than to contain, such agreements. . . . This conclusion is bolstered by Congress' 1990 authorization of contingent-fee agreements under § 406(a)."). Instead, courts review these agreements "as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. The statute establishes a fee cap at 25 percent of the past-due benefits, but beneath that boundary the successful attorney still must show the fee is reasonable. *Id.* The analytical structure, the Court suggested, looks first to the agreement, then tests it for reasonableness based on factors such as "the character of the representation," the results achieved, the attorney's standard noncontingent-fee rate, and the hours spent on the case. *Id.* at 808.

The Sixth Circuit has developed a nuanced approach to this reasonability analysis, grounded in a close examination of contingent fees. Facing a "chaotic battleground of inconsisten[t]" caselaw across the circuits, and endeavoring to bring "a semblance of order" and a "predictable approach" to it, the court fixed the 25 percent statutory cap as a "benchmark," but one that was "not to be viewed as *per se* reasonable." *Rodriquez*, 865 F.2d at 746. From this "starting point" the "court should then look to whether a fee agreement has been executed." *Id.* Such agreements, even where they called for a maximum fee, are accorded a rebuttable presumption overcome only by "special circumstances." *Id.*

Two "special" situations merit reductions from the agreed-upon fee: (1) where the attorney was improperly ineffective; and (2) "situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from

minimal effort expended." *Id.* If neither set of circumstances is present, an agreement for the maximum fee "is presumed reasonable." *Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 421 (6th Cir. 1990); *see also Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014) ("[O]ur precedent accords a rebuttable presumption of reasonableness to contingency-fee agreements that comply with § 406(b)'s 25-percent cap."); *Allan v. Comm'r of Soc. Sec.*, No. 10-11651, 2014 WL 1818110, at *1 (E.D. Mich. May 7, 2014) (discussing *Rodriquez*).

The first special circumstance seeks to counteract the attorney's temptation to fatten his or her fee by stretching out the proceedings so that the "past-due benefits," the attorney's fee base, continue to accumulate. *Rodriquez*, 865 F.2d at 746-47. It no doubt stems from the longstanding repulsion in the legal profession to stirring up vexatious suits for the lawyer's own pecuniary gain. *See generally* Max Radin, *Maintenance by Champerty*, 25 Cal. L. Rev. 48, 66-72 (1935). Allowing a lawyer to hold a speculative interest in another's legal claim was thought to increase fractious and ill-founded litigation by augmenting the lawyer's prospective monetary reward. *Id.* This fee arrangement was historically disparaged, and prohibited, as "champerty." *Id.*; *see also Gisbrecht*, 535 U.S. at 810 (Scalia, J., dissenting) ("That is why, in days when obtaining justice in the law courts was thought to be less of a sporting enterprise, contingent fees were unlawful."). As the Michigan Supreme Court stated in 1857 when holding against the practice, "champerty presents a strong temptation to engage in [frivolous litigation]; that of pecuniary profit; one that has a charm which captivates the man of intellect and

learning and genius, as well as the more stupid and unlearned." *Backus v. Byron*, 4 Mich. 535, 551 (1857).

*Rodriquez*'s second "special circumstance" reflects the more common concern that the lawyer has driven a hard bargain and wrenched the promise of an excessive fee from his or her client. *Rodriquez*, 865 F.2d at 747. Deductions for such "windfalls" are appropriate where, for example, the attorney relied on boilerplate pleadings or "no legal research is apparent." *Id.* The court observed that the hours spent on a case usually "will bear little if any relationship to the results achieved." *Id.* The size of the award likewise does not precisely correlate with the advocate's skill. *Id.* at 743. At the same time, a maximum award is merited "for extensive effort on the part of counsel who have overcome legal and factual obstacles to the enhancement of the benefits awarded to his client." *Id.* at 747.

While this reasoning allows courts to compute the hypothetical hourly award rate—the contractual fee divided by the hours spent—to test for windfalls, the Sixth Circuit has stressed that a steep rate alone does not justify reducing the award. *Hayes*, 923 F.2d at 421 (discussing *Royzer v. Sec'y of Health & Human Servs.*, 900 F.2d 981 (6th Cir. 1990); *McGuire v. Bowen*, 900 F.2d 984 (6th Cir. 1990)). Nonetheless, the hypothetical hourly remains a relevant consideration and "a windfall can never occur when . . . the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market." *Id.* at 422. Doubling the standard rate ensures that Social Security attorneys, who succeed "in approximately

50% of the cases they file," will earn the standard rate when averaged across all of their cases. *Id. See also* Stewart Jay, *The Dilemmas of Attorney Contingent Fees*, 2 Geo. J. Legal Ethics 813, 815-16 (1989) ("'[T]he individual clients whose cases result in large recoveries pay more for their legal services than they might otherwise, in order to protect their attorney/insurer against the losses he has suffered and will continue to suffer from other cases.' As with any form of insurance, contingent fees have been defended on the ground that they distribute the cost of attorneys' fees throughout a group of persons who otherwise might not be able . . . to finance legal services." (quotation omitted)).

Awards that fall below this "floor" are *per se* reasonable. *Hayes*, 923 F.2d at 422. Fees in excess of this floor "may well be reasonable" after considering factors such as the case's difficulty and the proportion of hours spent by the attorney and the attorney's administrative assistants. *Id.* Courts also consider whether the award would "unduly erode the claimant's benefits." *Royzer*, 900 F.2d at 982; *see also Allan*, 2014 WL 1818110, at *3. One court, for example, awarded fees only after it determined "[t]here is no danger that awarding the fees in accordance with the contingency fee agreement here will strip the claimant's daughter of a real recovery." *Castaneda v. Comm'r of Soc. Sec.*, No. 2:10-CV-13724, 2013 WL 2285448, at *3 (E.D. Mich. May 23, 2013).

The core consideration in the windfall analysis, however, remains whether the attorney gained a large award with minimal effort or risk. *Hayes*, 923 F.2d at 422. Because a contingency fee is premised on the risk of failure, and the attorney is in a much better position to calculate that risk ex ante, examining the attorney's subsequent "effort" is a way of measuring whether the contingency rate reflected the actual risk inherent in

10

the case. In general, the fee rate rises as the chance of prevailing falls. *See Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986). In other words, if the contingent fee functions as a loan by the lawyer to his or her client, the "implicit interest rate" on the loan (i.e., the contingent fee) may be high because the risk of default (i.e., losing the case) is high. Richard A. Posner, *Economic Analysis of Law* 614 (7th ed. 2007). Thus courts will "review the strength of the claimant's case in order to determine whether the percentage is reasonably related to the risk of loss before the Secretary." *McGuire v. Sullivan*, 873 F.2d 974, 981 (7th Cir. 1989).

## IV. Analysis

### A. Ballatore's Fee Agreement

The Commissioner's initial brief, while not opposed to Fabrizio's requested fee, observed that the fee agreement with Ballatore could limit the award to 25 percent of the amount Ballatore actually receives. (Doc. 35 at 5-8.) In developing this argument as one of the acceptable alternatives, the Commissioner stated that the agreement did not expressly provide for overpayments, which would limit the amount received. (*Id.* at 5-6.) As noted above, the Commissioner's recent decision to pay Ballatore the full entitlement amount means that contract will permit Fabrizio to seek the statutory maximum. That is, 25 percent of the money Plaintiff "get[s]," as the contract puts it (Doc. 31 at Pg ID 581, 601 (emphasis removed)), will equal the statutory cap of "25 percent of the total past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). Thus, the only question facing the Court is whether Fabrizio is entitled to the maximum fee award.

*B. Analysis*

The Court has an independent duty to ensure the fee's reasonableness, even though the parties agree that the statutory maximum award is appropriate. *See Gisbrecht*, 535 U.S. at 807; *Tibbetts v. Comm'r of Soc. Sec.*, No. 1:12-cv-894, 2015 WL 1637414, at *3 (S.D. Ohio Apr. 13, 2015) (adopting Report & Recommendation). There is an additional, unaddressed wrinkle in their agreement. Plaintiff's initial motion asks for the full 25 percent, or $23,394.25, less the Commissioner's fee of $91, for a total of $23,303.25. (Doc. 31 at 10.) The Commissioner's response agrees with the $23,394.25 total, but states that $6000 already has been approved under 42 U.S.C. § 406(a) for Fabrizio's administrative-level work and that, adjusting for this disbursement, the award should be $17,394.25. (Doc. 35 at 7-8.)

Section 406(a) provides that the Commissioner can "fix . . . a reasonable fee to compensate [a successful claimant's] attorney" for services performed at the administrative level. 42 U.S.C. § 406(a)(1). In cases where the claimant is owed past-due benefits, the claimant and party can enter into a fee agreement allowing the attorney the lesser of either a portion of the total benefits up to 25 percent or a statutorily determined amount, currently adjusted to $6000. *Id.* § 406(a)(2)(A); *Maximum Dollar Limit in the Fee Agreement Process*, 74 Fed. Reg. 6080, 6080 (Feb. 4, 2009). The § 406(a) fees come out of the past-due benefits. 20 C.F.R. § 404.1730(b).

Once an award is determined, the Commissioner will withhold the maximum possible award that the Court could order under § 406(b). *See* 20 C.F.R. § 404.1728(b); *see also Demijohn v. Comm'r of Soc. Sec.*, No. 05-10322, 2010 WL 2474823, at *1 (E.D.

12

Mich. June 14, 2010). Though the "court fee is in addition to the fee, if any, [the Commissioner] authorizes" for administrative-level work, the withheld amount is used for all "direct payment[s] of fees, whether authorized by [the Commissioner], a court, or both. *See* Soc. Sec. Admin., *Program Operations Manual System* ("POMS"), GN 03920.017(F)(5) (March 28, 2013).[2] In other words, the Commissioner withholds 25 percent of the past-due benefits and uses it to pay fees for both administrative and court work. *See* Frank Bloch, *Federal Disability Law and Practice* § 6.4 (1984) ("The Administration will withhold up to 25 percent of past-due benefits for direct payment to attorneys for agency-level representation; a larger fee can be awarded, but only 25 percent of past-due benefits can be withheld.").

In this case, the Commissioner has, or will, pay the $6000 administrative-level award from the withheld funds, leaving $17,394.25 for the § 406(b) award. For 28.2 hours of work, that would equal an hourly rate of $616.82. (*Id.* at 8.) This rate is acceptable to the Commissioner. Plaintiff's reply and his recent supplemental brief do not discuss the Commissioner's proposed $6000 reduction, but they both again request the full 25 percent. (Doc. 37 at 4; Doc. 44 at 4.) Consequently, the Court remains somewhat uncertain whether Fabrizio seeks $23,303.25 in addition to the $6000 will receive for his work at the agency level.

The Commissioner has not explained why the $6000 should be deducted, but two potential reasons are apparent. First, the deduction could serve to keep the total attorney award, for both agency and court work, beneath § 406(b)'s ceiling. The Commissioner

---

[2] *Available at* http://secure.ssa.gov/poms.nsf/lnx/ 0203920017.

has made this argument in prior cases within this Circuit. *See, e.g.*, *Campbell v. Astrue*, No. 05-521, 2009 WL 2342739, at *3 (E.D. Ky. July 28, 2009) ("The [Commissioner] . . . also argues that the fee must be reduced because any fee awarded under section 406(a) should be considered in determining the amount awarded under section 406(b) so that the aggregate fee paid by the claimant does not exceed twenty-five percent of past-due benefits."); *Whisman v. Astrue*, No. 07-122, 2008 WL 5173466, at *2 (E.D. Ky. Dec. 10, 2008) (same). However, in the Sixth Circuit, the 25 percent maximum in § 406(b) does not cap the combined amount an attorney can receive under both § 406(a) for administrative-level work and § 406(b) for work in the federal court. *See id.*; *see also Clark v. Astrue*, 529 F.3d 1211, 1214-15 (9th Cir. 2008) (discussing the Sixth Circuit's position).

Not all circuits agree, and presently there is a split between those in the Sixth Circuit's camp and those which hold that "§ 406(b) limits the combined attorney's fees awarded under both § 406(a) and § 406(b) to 25% of the claimant's past-due benefits." *Id.* (describing the split and holding that the Sixth Circuit's view is correct); *see also Wrenn ex rel. Wrenn v. Astrue*, 525 F.3d 931, 937-38 (10th Cir. 2008) (holding that § 406(b) does not cap the combined fees, as citing Sixth Circuit precedent as support); *Morris v. Soc. Sec. Admin.*, 689 F.2d 495, 497 (4th Cir. 1982) (limiting the combined award to 25 percent); *Dawson v. Finch*, 425 F.2d 1192, 1195 (5th Cir. 1970) (same); *Carbonell v. Comm'r of Soc. Sec.*, No. 6:11-cv-400-Orl-22DAB, 2015 WL 631375, at *3 (M.D. Fla. Feb. 13, 2015) (adopting Report & Recommendation) ("[I]n this circuit [the

Eleventh Circuit], the total fee under 406(a) and (b) cannot exceed 25% of the past-due benefits." (citations omitted)).

The Sixth Circuit established its position on this matter in *Horenstein v. Secretary of Health & Human Services*. 35 F.3d 261. There the court overruled what was known as the "single tribunal rule," which held that the tribunal upholding the claim for benefits "'is the only tribunal that can approve and certify payment of an attorney fee, and that fee cannot exceed 25% of the past-due benefits awarded by that tribunal.'" *Id.* at 262 (quoting *Webb v. Richardson*, 472 F.2d 529, 536 (6th Cir. 1972)). To the contrary, the *Horenstein* court found that the two fee provisions were separate:

> We recognize that Congress made distinct and explicit provisions for a "reasonable fee" for work done before the Secretary under Section 406(a)(1) and that there is no requirement that such an award be made from past-due benefits. Likewise, we recognize that section 406(b)(1) establishes a separate standard for awarding fees for work performed in cases decided by a judge and that those fees may not be 'in excess of 25 percent of the total of past-due benefits.' . . . Finally, in cases where the court remands the case back to the Secretary for further proceedings, the court will set the fee—limited to 25 percent of past-due benefits—for the work performed before it, and the secretary will whatever fee the Secretary deems reasonable for the work performed on remand and prior administrative proceedings.

*Id.*

While a few cases in this Circuit, not citing to any authority, have stated that § 406(b) caps both agency and court fees,[3] the courts that have examined *Horenstein* hold

---

[3] For example, in *Figard v. Commissioner of Social Security*, the court noted that the plaintiff's attorney properly reduced his § 406(b) fee request by the amount he received under § 406(a). 2012 WL 1601300, at *2. The court cited *Horenstein* for the proposition that the agency and court fees were separate, but did not explain why this required the agency fee to offset the court fee. If they are separate fees, then there would be no need for the offset. *See also Karadsheh v. Comm'r of Soc. Sec.*, No. 1:08-cv-988, 2011 WL 5041366, at *3 (W.D. Mich. Sept. 26, 2011) (same), *Report & Recommendation adopted by* 2011 WL

15

otherwise. As the court in *Campbell v. Astrue* explained, the *Horenstein* decision enjoined the Commissioner from enforcing administrative rulings that limited awards for administrative-level work to 25 percent of past-due benefits. 2009 WL 2342739, at *3. Before *Horenstein*, other courts had recognized this "single tribunal rule" effectively capped the total award at 25 percent of past-due benefits. *Id.* at *3 n. (citing *Harris v. Sec'y of Health and Human Servs.*, 836 F.2d 496, 498 n. 1 (10th Cir.1987), *overruled by Wrenn ex rel. Wrenn*, 525 F.3d at 937-38; *Morris*, 689 F.2d 495). In overturning that rule, *Horenstein* focused on the separate and independent nature of the statutory authority to award fees, held by the Commissioner and the courts. *Id.* (citing *Horenstein*, 35 F.2d at 262). According to the *Campbell* court, this focus "directs courts to address the attorney

---

5041316, at *1 (W.D. Mich. Oct. 24, 2011); *but see Marion v. Comm'r of Soc. Sec.*, No. 3:11-cv-00911, 2013 WL 5718753, at *2 (N.D. Ohio Oct. 18, 2013) (citing *Karadsheh* as support for the conclusion that § 406(b)'s cap does not apply to § 406(a)).

Other courts, without citing *Horenstein* or any other law, have stated that total fees awarded for agency and court work may not exceed 25 percent of the past due benefits. *See Tibbetts v. Comm'r of Soc. Sec.*, No. 1:12-cv-894, 2015 WL 1637414, at *2 (S.D. Ohio Apr. 13, 2015) (adopting Report & Recommendation). Another case holds similarly, but also block quotes *Horenstein* for the proposition that § 406(a) agency awards "may not be included in a fee award made by this Court." *Cyrus v. Comm'r of Soc. Sec.*, No. 1:11cv234, 2014 WL 5432123, at *4 (S.D. Ohio Oct. 27, 2014) (adopting Report & Recommendation). This is ambiguous; it could mean either that the court cannot award § 406(a) fees, or that the court must deduct such fees from the § 406(b) award. The former is the more natural interpretation, and would not require an offset. Moreover, the author of both *Tibbetts and Cyrus* had previously written that, under *Horenstein*, "if a contingency fee agreement provides for payment of the statutory maximum fee, the full 25% can be awarded for work performed before the court under § 406(b), even if a prior award has been made under § 406(a) for work performed at the administrative level." *Willis v. Comm'r of Soc. Sec.*, No. 1:10-cv-594, 2013 WL 4240835, at *4 (S.D. Ohio Aug. 14, 2013) ("*Willis I*"), *Report & Recommendation adopted with other modifications by* 2014 WL 2589259 (S.D. Ohio June 10, 2014) ("*Willis II*").

Finally, one opinion noted, without citing *Horenstein*, that the § 406(b) fee was presumptively reasonable because, "when combined with the amount of fees his partner seeks before the Commissioner at the administrative level pursuant to § 406(a), amounts to less than the full 25 percent recovery allowed." *Brown v. Comm'r of Soc. Sec.*, No. 2:11-CV-11535, 2013 WL 2634445, at *2 (E.D. Mich. June 12, 2013). This implies, at least weakly, that the 25 percent of past due benefits represents the maximum award allowable.

16

fee award under section 406(b) separately from any award granted under section 406(a)," and thus it "sets the rule" that no across-the-board 25 percent cap applies. *Id.* at *4.

Other circuits and lower courts have interpreted *Horenstein* to include the same holding. *See Rice v. Astrue*, 609 F.3d 831, 834 n.10 (5th Cir. 2010); *Clark*, 529 F.3d at 1215; *Wrenn ex rel. Wrenn*, 525 F.3d at 937-38; *Willis v. Comm'r of Soc. Sec.*, No. 1:10-cv-594, 2013 WL 4240835, at *4 (S.D. Ohio Aug. 14, 2013) ("*Willis I*"), *Report & Recommendation adopted with other modifications by* 2014 WL 2589259 (S.D. Ohio June 10, 2014) ("*Willis II*"); *Ratliff v. Comm'r of Soc. Sec.*, No. 1:08CV2388, 2013 WL 633606, at *2 (N.D. Ohio Feb. 20, 2013); *Watkins v. Astrue*, No. 08-163, 2012 WL 4748826, at *2 (E.D. Ky. Oct. 4, 2012); *Whisman*, 2008 WL 5173466, at *2.

A potential problem with the above analysis, pointed out by the Commissioner in other cases, is that the language cited from *Horenstein* might constitute *dicta*. *See Campbell*, 2009 WL 2342739, at *4; *Whisman*, 2008 WL 5173466, at *2. Courts addressing this argument, however, found the language persuasive and applied it. *Campbell*, 2009 WL 2342739, at *4; *Howard v. Astrue*, No. 06-21, 2009 WL 2240562, at *4-6 (E.D. Ky. July 27, 2009); *Whisman*, 2008 WL 5173466, at *2. In doing so, they also rejected the argument that it would be "poor public policy" to allow total awards—for agency and court work—to exceed 25 percent of past-due benefits. *Whisman*, 2008 WL 5173466, at *2. That is, they do not find, as does the Fourth Circuit, that the "obvious intent of Congress was to establish a ceiling for attorney's fees that was independent of the course of the proceedings." *Morris*, 689 F.2d at 498. To the contrary, the plain language of § 406(b) applies the cap only to court awarded fees, *Clark*, 529 F.3d at 1213,

17

while § 406(a) provides the Commissioner independent power to award fees. *Horenstein*, 35 F.3d at 262. Thus, § 406(b) does not limit the combined award. Here, that means that the statute does not prevent the Court from ordering a fee of $23,394.25 for Fabrizio's work before the Court in addition to anything the Commissioner paid separately.[4]

However, a second, more persuasive reason exists for limiting the award to a maximum of $17,394.25. Fabrizio's contract with Ballatore entitles him to one-quarter of the "money [Ballatore] get[s]," which Fabrizio computes as $23,394.25. (Doc. 31 at Pg ID 581, 601 (emphasis removed).) He has, or will, receive $6000 of this sum for his work at the agency level. This leaves $17,394.25 owing under the contract, to the extent the Court deems the contract reasonable. Awarding Fabrizio an additional $23,394.25 would result in a $29,394.25 fee, representing approximately 31.4 percent of the past-due benefits. The parties to the contract did not contemplate such a fee, as confirmed by Ballatore's letter stating that Fabrizio was owed approximately $23,000. (Doc. 48 at 1.) And as noted above, it is not clear that Fabrizio seeks this total amount.

Few courts have discussed similar situations. One has implied that the contractual 25 percent limit would require reduction of the § 406(b) award by the amount already paid out of the withheld funds. *Willis I*, 2013 WL 4240835, at *4. This approach also fits with *Gisbrecht*, which held that § 406(b) did not "displace contingent-fee agreements as the primary means by which fees are set." 535 U.S. at 807. Thus, in the present case, the Court can award Fabrizio a total of $17,394.25.

---

[4] If the Commissioner lacked the funds to directly pay the attorney because the combined awards exceeded the withheld amount, the attorney would likely be forced to seek payment from the claimant. *See Watkins*, 2012 WL 4748826, at *2-3 (citing POMS, GN 03920.055 (last updated May 19, 2014)).

Turning to the reasonability of this figure, there is no indication that Fabrizio was ineffective or needlessly prolonged the proceedings. *Rodriquez*, 865 F.2d at 746-47. He promptly filed his motion for fees within the time allowed by the Court. (Doc. 30.) The administrative delays—especially the nearly year-long delay between the disability determination and the issuance of an award letter (Doc. 31 at Pg ID 602-608)—are hardly Fabrizio's fault. True, some courts will weigh these delays against even blameless attorneys, but Fabrizio acted diligently in those matters under his control. *See Willis II*, 2014 WL 2589259, at *5 (collecting cases for the proposition that delays which are not the counsel's fault are nonetheless "relevant consideration[s] as to whether counsel received a windfall"). If reducing fees for delayed proceedings—*Rodriquez*'s first special circumstance—is intended to discourage attorneys from dilatory conduct, than that purpose would fail here where the attorney has no power to prevent the delays. The only other goal such a reduction would further is to prevent the fee from increasing, at the expense of the claimant, due simply to the passage of time rather than the attorney's efforts. Yet, leaving aside whether delay is a relevant risk encompassed by a contingency agreement, here Ballatore does not object to the fee. Consequently, reducing the award for the delays would serve no purpose.

Additionally, the award does not constitute a windfall. Taking the hypothetical hourly rate as a starting point,[5] the fee here results in a rate of $616.82 per hour. While

---

[5] As discussed above, though the Sixth Circuit has warned against undue preoccupation with hourly rates, the presumptions in *Rodriquez* and *Hayes* revolve around those rates. *See Hayes*, 923 F.2d at 421-22; *Rodriquez*, 865 F.2d at 747. Though some have questioned whether this approach survived *Gisbrecht*, courts regularly apply these cases to fee requests. *See Hamilton v. Comm'r of Soc. Sec.*, No. 09-11553, 2011 WL 10620498, at *5 (E.D. Mich. Aug. 15, 2011) ("To the extent that *Hayes* focuses on effective

Fabrizio has not presented information on his standard rate, it does not seem that $616.82 is significantly higher than twice the standard rate, which *Hayes* set as the ceiling of *per se* reasonableness. 923 F.2d at 422. The Michigan State Bar's 2014 study of billing rates, often used by courts to establish standard fees, offers helpful data. *See, e.g.*, *Drenning v. Comm'r of Soc. Sec.*, No. 12-13470, 2014 WL 4705133, at *4 (E.D. Mich. Sept. 21, 2014); *Hamilton*, 2011 WL 10620498, at *6. In the section of Oakland County where Fabrizio's office is located, the median hourly fee is $250, the average fee is $280 per hour, and fees at the 75th percentile are $325 per hour. State Bar of Michigan, *2014 Economics of Law Practice: Attorney Income and Billing Rate Summary Report* 5 (July 2014).[6] Attorneys who practice public benefits law charge a median rate of $225 per hour, an average of $231, and the rate at the 75th percentile is $250. *Id.* at 7.

Doubling almost any of these rates leads to a slightly lower figure than the hypothetical rate of $616.82; consequently, that rate is not likely *per se* reasonable. Yet it is not far above that range, particularly when considering the quality of Fabrizio's work, which could fairly place him at least in the 75th percentile. *See Hamilton*, 2011 WL 10620498, at *6 n.3 (using the 75th percentile figures where the quality of the lawyers works merited a greater standard rate).

In any event, the hypothetical rate falls well within the range of rates authorized by courts in this district and far below the uppermost awards from across the country.

---

hourly rate as the primary determinant of reasonableness of a contingent fee, it likely does not survive the Supreme Court's decision in *Gisbrecht*."), *Report & Recommendation adopted by* 2013 WL 1759137, at *1 (E.D. Mich. Apr. 24, 2013).

[6] *Available at* www.michbar.org/file/pmrc/articles/0000151.pdf.

20

See, e.g., *Tibbetts*, 2015 WL 1637414, at *5-6 ($600); *Drenning*, 2014 WL 4705113, at *4 ($691); *Castaneda*, 2013 WL 2285448, at *2-3 (nearly $600); *Hamilton*, 2011 WL 10620498, at *6 (awarding $625 and noting that "$312.50 . . . is hardly out of line with the hourly rates of attorneys of comparable skill in Michigan); *Joslyn v. Barnhart*, 389 F. Supp. 2d 454, 457 (W.D. N.Y. 2005) ($891); *Yarnevic v. Apfel*, 359 F. Supp. 2d 1363, 1365 (N.D. Ga. 2005) ($643); *Claypool v. Barnhart*, 294 F. Supp. 2d 829, 833-34 (S.D. W.Va. 2003) ($1,433.12); *Brown v. Barnhart*, 270 F. Supp. 2d 769, 772-73 (W.D. W. Va. 2003) ($977). Cases rejecting similar rates relied on facts not present here, such as a demonstrably low standard rate or objections to the request by the Commissioner. *See, e.g.*, *Woods v. Colvin*, No. 1:10-CV-1714, 2014 WL 2918454, at *4-7 (N.D. Ohio June 26, 2014) (finding $690 excessive where the Commissioner objected, the request was "5.3 times the amount [the attorney] would have received in [the] case had he been paid on an hourly basis," and the plaintiff's disability applications had been pending for almost three years before the attorney began representing the plaintiff).

The fact that other courts have awarded similar fees is evidence that Fabrizio's request is reasonable, but more is necessary to demonstrate that it does not constitute a windfall in this case. A review of Fabrizio's assiduous efforts and the successful results he produced for his client removes all doubt that he deserves the full amount available to him. Most impressively, he navigated past two Reports and Recommendations, each recommending rejection of Ballatore's motion. *Ballatore*, 2013 WL 1090671, at *3-5. While this required additional effort, the 28.2 hours spent on the case (Doc. 31 at Pg ID 587-92) fall within the average range for such work, which typically includes only one

21

Report and Recommendation. *See, e.g.*, *Short v. Comm'r of Soc. Sec.*, No. 1:12cv574, 2015 WL 4465189, at *5 (S.D. Ohio July 21, 2015) (noting that social security expend 20 to 30 hours on average); *Castaneda*, 2013 WL 2285448, at *2 (estimating the average hours spent to be between 25 and 35). Many hours went unrecorded, such as his Equal Access to Justice, 28 U.S.C. § 2412, fee request, encompassing an initial motion, objections to a Report, and a motion for reconsideration. (Doc. 31 at Pg ID 592.) Though he cannot include time spent on the current motion, *Fee v. Astrue*, No. 06-CV-14473, 2009 WL 91297, at *1 (E.D. Mich. Jan. 14, 2009), he carefully crafted his arguments, addressed initially vague facts, and helpfully responded to this Court's request for supplemental briefing.

His objections to both dispositive Reports ultimately prevailed, finding various errors and earning remand based on his *res judicata* argument. *Ballatore*, 2013 WL 1090671, at *3-5. *Res judicata* often is not straightforward and can require complex analysis. *See, e.g.*, *Erb v. Comm'r of Soc. Sec.*, No. 13-CV-14798, 2015 WL 730130, at *20-24 (E.D. Mich. Feb. 19, 2015) (adopting Report & Recommendation) (discussing the showing necessary to succeed in a *res judicata* claim). And Fabrizio succeeded against arguments and positions that had a reasonable basis in law. *See Ballatore v. Comm'r of Soc. Sec.*, No. 11-CV-15335, 2014 WL 2765269 (E.D. Mich. June 18, 2014), *upheld on reconsideration* 2015 WL 3580735 (E.D. Mich. June 5, 2015). He deserves the fullest compensation possible under the contract and the statute.

## V.  Conclusion

Fabrizio effectively advanced his client's interest and achieved excellent results. Success remained uncertain throughout, and consequently the contingency fee adequately gauged the case's inherent risk. I recommend granting his request in part and ordering an award of $17,394.25.

## VI.  REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 5, 2015                              S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 5, 2015                              By s/Kristen Krawczyk
                                                   Case Manager to Magistrate Judge Morris